# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 17-00096-TLM |
| JASON S. MONROE, ) | |
| ) | Chapter 13 |
| Debtor. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION

The chapter 13 debtor, Jason Monroe ("Monroe"), filed an objection to the proof of claim asserted by David Crosby ("Crosby").  Doc. No. 35 ("Claim Objection").[1]  Monroe and Crosby appeared through counsel on July 11, 2017, and presented argument on the Claim Objection.  No evidence was presented by either party.  The parties instead rested their positions on various documents attached to the Claim Objection and to Crosby's response, Doc. No. 38 ("Response").  Neither party objected to the documents attached by the other.  Many of the documents are copies of pleadings and judgments in state court litigation.[2]  The Court deems the

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

[2] These judicial documents consist of: (1) Complaint filed Dec. 9, 1999, in *Crosby v. Salsbury, et al.*, Case No. CV-99-1004, Third Judicial District, State of Idaho, Adams County ("Adams County Action"), Doc. No. 35-1; (2) Stipulation for Judgment filed July 9, 2001, in *Crosby v. Salsbury, et al.*, Case No. CVOC00-00744D, Fourth Judicial District, State of Idaho, Ada County ("Ada County Action"), and an August 1, 2001 Judgment entered thereon, Doc. No. 35-2; (3) Default Judgment filed Sept. 26, 2001, in the Ada County Action, Doc. No. 35-3; (4)
(continued...)

MEMORANDUM OF DECISION - 1

parties' approach as tantamount to a request for judicial notice of these court documents under Fed. R. Evid. 201, and will grant the implicit request. The few additional documents appended to the parties' papers will not be considered.

The approach taken by the parties presents a less than crystalline record. However, the following is derived from the state court documents, and the apparently undisputed portions of their recitations of the facts and litigation history.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Crosby established a relationship with the ex-wife of Harold Wayne Salsbury ("Salsbury"). Shortly thereafter, in June 1999, Crosby was attacked and beaten by Monroe and Brant Kemel Jackson ("Jackson"). As a result, Crosby sustained injuries to his head, face, back, chest, and arms, requiring hospitalization. A police investigation indicated that Monroe and Jackson were

---

[2](...continued)
Affidavit in Support of Default Judgment filed Aug. 28, 2001, in the Ada County Action, Doc. No. 35-4 and Doc. No. 38-5; (5) Satisfaction of Judgment Against Salisbury [*sic*] filed Nov. 2, 2001, in the Ada County Action, Doc. No. 35-5; (6) Stipulated Dismissal with Prejudice filed Feb. 7, 2002, in the Ada County Action, Doc. No. 35-6; (7) Judgment & Commitment filed Dec. 8, 1999, in *State of Idaho v. Monroe*, Case No. CR-99-2354, Third Judicial District, State of Idaho, Adams County ("Criminal Case"), Doc. No. 38-2; (8) Memorandum Decision and Order filed Sept. 11, 2000, in the Ada County Action, Doc. No. 38-3; (9) Amended Complaint filed Sept. 25, 2000, in the Ada County Action, Doc. No. 38-4; (10) Motion to Renew Judgment filed Aug. 25, 2006, in the Ada County Action, Doc. No. 38-7; (11) Order Renewing Judgment filed Sept. 25, 2015, in the Ada County Action, Doc. No. 38-8; (12) Order Renewing Judgment and Judgment filed Sept. 25, 2015, in the Ada County Action, Doc. No. 38-9; (13) Judgment Renewing Default Judgment filed February 5, 2016 in *Crosby v. Salsbury, et al.*, Case No. CV-OC-2000-26297, Fourth Judicial District, State of Idaho, Ada County, Doc. No. 38-10. (In the related adversary proceeding, discussed *infra*, Crosby asserts the case number shown on Doc. No. 38-10 is simply the result of an administrative renumbering of the Ada County Action.)

MEMORANDUM OF DECISION - 2

hired by Salsbury, through Edward Guild, to carry out the attack. Monroe pleaded guilty to felony counts of aggravated battery and kidnapping in the second degree, and was sentenced on December 8, 1999, to a 10 year term of incarceration (3 years fixed and 7 years indeterminate), and he was also required to pay restitution of $14,735.00 and court costs. Doc. No. 38-2.[3]

On December 9, 1999, Crosby filed a civil complaint in Adams County against Salsbury, Guild, Jackson, and Monroe, seeking damages for the injuries he sustained. Doc. No. 35-1. At some point, Crosby commenced another civil action in Ada County and filed an amended complaint therein on September 25, 2000, against Salsbury, Guild, Jackson and Monroe. Doc. No. 38-4. On August 1, 2001, upon stipulation between Crosby and Salsbury, the state court entered judgment against Salsbury in the amount of $300,000. Doc. No. 35-2. This judgment specifically addressed its recording, the creation of a lien on Salsbury's real property, and payment of the judgment. It was silent as to any of the other three defendants.

Since no answer was filed by Monroe or Jackson, Crosby filed a motion for

---

[3] *See also* Doc. No. 38-3 (Mem. Decision and Order of Sept. 11, 2000, granting motion to amend complaint to assert claim for punitive damages). In the Ada County Action, the Idaho district court found Salsbury desired to have Crosby injured due to Crosby's involvement with Salsbury's former wife, and Salsbury paid Guild, who hired Jackson, who in turn recruited Monroe. Jackson and Monroe lured Crosby into a rural area and severely beat him. Guild paid Monroe and Jackson from the funds he had received from Salsbury. That court noted that Monroe and Jackson pled guilty to aggravated battery and second degree kidnapping charges, that Guild pled guilty to conspiracy to commit aggravated battery, and that Salsbury was awaiting trial in October 2000.

MEMORANDUM OF DECISION - 3

default judgment against them and a supporting affidavit.  *See* Doc. No. 35-4 (affidavit in support of default judgment, Aug. 20, 2001).  On September 26, 2001, the court awarded Crosby a "[j]udgment in the sum of $120,000.00, *jointly and severally against Defendant [sic], Jason S. Monroe and Brant Kemel Jackson,* plus costs of $117.00, for a total of $120,117.00."  Doc. No. 35-3 (emphasis added).

A little more than one month after the default judgment was entered against Monroe and Jackson, Crosby filed a satisfaction of judgment indicating he had received $304,674.66, in "full satisfaction *of the judgment against Harold Wayne Salisbury in this action.*"  Doc. No. 35-5 (emphasis added).

Crosby thereafter continued to pursue recovery on the default judgment against Monroe and Jackson.  *See* Doc. Nos. 38-7 (motion) and 38-8 – 38-10 (orders renewing judgment, the last on Dec. 24, 2015).[4]

On February 3, 2017, Monroe filed his chapter 13 petition.  Crosby filed a proof of claim in the amount of $279,807.38 based on the September 2001 default judgment and significant accrued interest.  Monroe's Claim Objection argues he no longer has any liability to Crosby.  Alternatively, Monroe asserts that if there is a claim, the amount is overstated because Crosby did not account for payments

---

[4] Crosby also alleges he undertook collections activities, including garnishments, against Monroe.

MEMORANDUM OF DECISION - 4

received through garnishment and otherwise.

On April 24, 2017, Crosby filed a complaint against Monroe commencing an adversary proceeding seeking a judgment of nondischargeability under § 1328(a)(3) as to the restitution component of the criminal judgment and under § 1328(a)(4) as to the civil default judgment. Adv. No. 17-06015-TLM. That matter has been temporarily stayed as a result of the hearing on and submission of the Claim Objection.

## ANALYSIS AND DISPOSITION

### A.    Claim litigation

This Court has explained:

> A timely proof of claim, filed in accordance with Rule 3001, constitutes prima facie evidence of the validity and amount of the claim. [Section] 502(a); Rule 3001(f); *see also In re Parrott Broadcasting Ltd. P'ship*, 492 B.R. 35, 38 (Bankr. D. Idaho 2013) ("*Parrott*"); *In re Schweizer*, 354 B.R. 272, 279 (Bankr. D. Idaho 2006). The party objecting to the allowance of a claim bears the burden "to produce evidence sufficient to negate the prima facie validity of the filed claim. If the objector produces evidence sufficient to negate the validity of the claim, the ultimate burden of persuasion remains on the claimant to demonstrate by preponderance of the evidence that the claim deserves to share in the distribution of the debtor's assets." *Spencer v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993) (citing *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)); *see also Parrott*, 492 B.R. at 38.

*In re Gray*, 522 B.R. 619, 625 (Bankr. D. Idaho 2014).

The Court may disallow a timely filed proof of claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement

MEMORANDUM OF DECISION - 5

or applicable law for a reason other than because such claim is contingent or unmatured[.]" *See* § 502(b)(1). Monroe first argues that, under Idaho law, Crosby's claim is unenforceable.[5]

### B. Liability of joint tortfeasors

The primary issue here is the effect of Crosby's release of Salsbury. The Idaho Supreme Court has held:

> [Idaho Code] § 6-805 governs the effect of the release of one tortfeasor on the liability of other tortfeasors. Under the statute, the effect of a tortfeasor's release on other tortfeasors depends on whether there is joint and several liability. I.C. § 6-805(1) applies to "a release by an injured person of one (1) joint tortfeasor," i.e., there is joint and several liability, and allows the reduction of the claim against other tortfeasors for the amount of the settlement. I.C. § 6-805(2), on the other hand, applies to "a release by the injured person of one (1) or more tortfeasors who are not jointly and severally liable to the injured person" and only allows a reduction when the release so provides.

*Horner v. Sani-Top, Inc.*, 141 P.3d 1099, 1104 (2006) (quoting Idaho Code § 6-805); *see also Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 334 P.3d 780, 799 (2014).

This requires evaluation of joint and several liability. Idaho Code § 6-803(3) states, "The common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section[.]" *Horner*, 141 P.3d at 1104. Idaho Code § 6-803(5) provides:

---

[5] The Claim Objection uses the term invalid but on the whole contends it is unenforceable given the satisfaction of Salsbury's judgment.

MEMORANDUM OF DECISION - 6

> (5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

The Idaho Code also defines the term "joint tortfeasor":

> (4) As used herein, "joint tortfeasor" means one (1) of two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Idaho Code § 6-803(4).

On the judicial records of the Idaho district court now before it, this Court can confidently conclude that Salsbury, Jackson and Monroe pursued a common plan to attack and injure Crosby and acted in concert in doing so.[6] Under the Idaho statutes, as interpreted by the Idaho Supreme Court, they are jointly and severally liable for Crosby's injuries and damages and are "joint tortfeasors." Idaho Code § 6-803(4)–(5). Focus now turns to the impact or consequences of the satisfaction of the Salsbury judgment based on Salsbury's payment of $304,674.66.

### C. Release of, or reduction in liability of, joint tortfeasors

As noted in *Horner*, Idaho Code § 6-805(2) applies only to a release by one

---

[6] While Guild is a named defendant and is occasionally mentioned, the documents provided do not establish a judgment entered against Guild. (Doc. No. 35-6 indicates Crosby stipulated to the dismissal of Guild from the Ada County Action due to a "voluntary settlement" which is not further explained.) Decisions as to Guild are unnecessary to the disposition of this matter.

MEMORANDUM OF DECISION - 7

tortfeasor where the tortfeasors "are not jointly and severally liable to the injured person" in which case other tortfeasors' liabilities are reduced only if the release so provides. 141 P.3d at 1104. Under that provision of the Idaho Code, a reduction in the liability of other tortfeasors requires, in addition to a release addressing such a reduction, that the "comparative liability of the tortfeasor receiving the release is presented to and considered by the finder of fact, whether or not the finder of fact apportions responsibility to the tortfeasor receiving the release."

Section 6-805(2) is not applicable here for three reasons. First, on the present record, the three parties here (Salsbury, Jackson and Monroe) *are* jointly and severally liable. Second, even if the satisfaction of judgment constitutes a "release," it does not "provide" for any reduction in liability of other tortfeasors. And, third, nothing in the record before this Court clearly indicates the state court, in entering the stipulated judgment against Salsbury and the later default judgment against Monroe and Jackson, or in entering the satisfaction of Salsbury's judgment, considered the "comparative liability of [Salsbury,] the tortfeasor receiving the release."[7]

However, the Court concludes Idaho Code § 6-805(1) is applicable. It provides:

---

[7] That the state district court entered two separate judgments (Salsbury's and Monroe/Jackson's) is addressed further below.

MEMORANDUM OF DECISION - 8

> A release by the injured person of one (1) joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but, unless otherwise provided in subsection (2) of this section, reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if such amount or proportion is greater than the consideration paid.

Idaho Code § 6-805(1).

Monroe claims the judgment against him in the amount of $120,117.00 was reduced by $304,674.66 (and, thus, was reduced effectively to $0). Monroe views the satisfaction of judgment as a "release by the injured person [Crosby] of one (1) joint tortfeasor [Salsbury] . . . after judgment" and, because Idaho Code § 6-805(2) does not "otherwise provide," Salsbury's payment "reduces the claim against the other tortfeasors in the amount of the consideration paid for the release[.]"

Monroe's argument for reduction is necessarily premised upon his contention that the $300,000 stipulated judgment amount represented the *total* damages to which Crosby was entitled for his injuries. This argument, however, ignores the fact that the judgment, and the stipulation on which it was entered, lack any express articulation that $300,000 was the total amount of damages. Further, when the state court subsequently entered in the very same lawsuit a $120,117 default judgment against Monroe and Jackson, it said nothing to indicate the $120,117 was intended to be part and parcel of the $300,000. Moreover, Monroe's

MEMORANDUM OF DECISION - 9

interpretation does not account for the language in the default judgment that expressly states the $120,117 liability of Monroe and Jackson is *their* joint and several liability.

On the other hand, Crosby's argument that the $300,000 stipulated judgment represented Salsbury's individual liability, and the later $120,000 default judgment against Monroe and Jackson was an adjudication of the joint and several liability of just those two defendants, has its own issues.  Crosby's September 2000 amended complaint, Doc. No. 38-4, sought "Judgment against all Defendants, jointly and severally, for compensatory damages" and for "punitive damages[.]" *Id.* at 4.  Treating the Salsbury judgment as establishing *only* Salsbury's individual liability seems facially inconsistent with the prayer in Crosby's amended complaint and his assertion that all the defendants acted jointly and in concert, and that all were jointly and severally liable for all damages.  Certainly nothing in the later request for default judgment against Monroe and Jackson expressly clarified that Crosby believed $420,000 was the reasonable amount of all his damages and, thus, he was seeking a $120,000 judgment against two defendants that had not yet agreed to pay anything.

The Court's challenge is to interpret and construe the state court's ruling.  It does so from the language used by the state court and the context of the rulings—all with an eye on the statutory provisions.

MEMORANDUM OF DECISION - 10

Recall, Idaho Code § 6-805 contemplates reduction from the *total amount* of damages against joint tortfeasors by the amount paid by one tortfeasor. The problem here is determining that "total amount."

The amount of the damages awarded to Crosby came in multiple stages. First, Crosby and Salsbury stipulated that Crosby "shall recover from [] Harold Wayne Salsbury [] the sum of $300,000" plus interest, which was signed by the state district court on August 1, 2001. Doc. No. 35-2 at 2, 7. Nothing in the Salsbury judgment indicated it applied to the other defendants who were not named in that judgment.

Second, while the parties did not provide the motion for default judgment, they did provide a copy of Crosby's August 28, 2001 affidavit filed in support of default judgment. Doc. No. 38-5. In Crosby's affidavit, he outlined actual damages and sought general damages for pain and suffering. *Id*. at 2. Crosby asserted in his affidavit that "I believe $120,000 is a reasonable sum as a judgment against Monroe/Jackson, jointly and severally for their conduct and the consequences proximately caused by same." Doc. No. 38-5 at 2.

As noted, the default judgment entered against Monroe and Jackson does not, facially, attempt to establish that $420,000 is the total amount of damages. However, the affidavit in support of entry of default judgment expressly asserted that "$120,000.00 is a reasonable sum as a judgment *against Monroe/Jackson,*

MEMORANDUM OF DECISION - 11

*jointly and severally, for their conduct* and the consequences proximately caused by same." That affidavit was filed on August 28, 2001, *after* the July 9, 2001 stipulation for judgment and after the Salsbury judgment was itself entered on August 1, 2001. The state court therefore was aware of the existence of the earlier judgment when it entered the requested default judgment. In finding that a judgment against Monroe and Jackson of $120,117 was warranted, the state court could not have conceivably or plausibly intended that this amount would be merely a mathematical component of or included within the earlier $300,000 judgment which was at that time outstanding.[8] Given the court's knowledge of its own record and actions, it appears the $120,117 judgment was a separate award to Crosby and recoverable by him jointly and severally from Monroe and Jackson.

As already explained, Monroe, as the objecting party, had the burden of providing "evidence sufficient to negate the prima facie validity of the filed claim." *Gray*, 522 B.R. at 625. On the evidence and record presented, Monroe has not shown that his judgment debt to Crosby was rendered unenforceable by reason of state law and Salsbury's payment of $304,674.66. To the extent that it might be argued Monroe met that initial burden and the onus shifted to Crosby, the same documentary record establishes an outstanding judgment owed by Monroe.

---

[8] The Salsbury satisfaction of judgment was only later filed on November 2, 2001. Doc. No. 35-5.

MEMORANDUM OF DECISION - 12

### D.   Amount of Monroe's liability to Crosby

Monroe has also argued that if the claim is not eliminated, the amount asserted is inaccurate and overstated.  Monroe argues that any amount received from Jackson should have been credited against the debt Monroe and Jackson jointly and severally owe.  Doc. No. 35 at 7.  In addition, Monroe alleges he has not received full credit for rental income levied by Crosby, explaining "[i]t is unclear what payments have been made from the renters residing in Debtor's property."  *Id.*[9]  In response, Crosby simply argues that Monroe has been given all credits to which he is entitled and that the amount of the filed proof of claim accurately reflects such credits.  Doc. No. 38 at 11.

At hearing, Monroe focused on his arguments regarding an unenforceable claim.  He failed to provide any evidence of payments voluntarily or involuntarily made by himself or Jackson, or the levied amounts recovered by Crosby from the "renters."  Nor were Crosby's calculations of accrued interest on the judgment, and offsets against those amounts due to recoveries, *see* Claim No. 3-1 at 2, addressed at hearing.  Monroe's speculation that payments were not properly credited is not enough to satisfy the burden of producing evidence to negate the prima facie validity of the proof of claim.

---

[9]   Monroe similarly argues that default judgment should be "reduced by the amount of consideration paid by Mr. Guild," in exchange for his release of liability.  Doc. No. 35 at 5. However, Monroe has not provided evidence of any amount paid by Guild.

MEMORANDUM OF DECISION - 13

**CONCLUSION**

Monroe has not shown that Crosby's proof of claim is unenforceable under Idaho law. Neither has he shown that the amount of Crosby's proof of claim is inaccurate. Therefore, the Claim Objection will be overruled and Crosby's claim allowed. Counsel for Crosby may submit a proposed form of order on this decision.

DATED: September 14, 2017

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE